22-250 and 22-347 United States v. Conde and we have attorney Yanella for the appellant who would like to reserve two minutes for rebuttal. Is that right? Yes, your honor. Very good. Whenever you're ready. Good morning, your honors. The prerequisites for admitting a record of regularly conducted activity include that the record was made at the time by someone with knowledge, that it was kept in the course of regularly conducted activity of a business, and that making the record was a regular practice. And there's a fourth prong saying that there either has to be a custodian coming in to self-authenticating under Rule 902.11. And the sole issue for appeal in this case is the district court's decision to admit as a business record an optimum payment record. That's what the government called the trial, an optimum payment record. And the government made a motion in limine to admit that and we filed opposition papers fully preserving all the issues that are raised here for appeal. We also argued it orally at the final pretrial conference and the court admitted it. And the heart of the argument here is that this is obviously not made by someone with knowledge at the time. And why do I say that? I say that because it's a single page document and the top of it is pretty straightforward. If it were only that, this would be a very standard business record case. But the bottom of the record has two additional entries in which optimum said they were unable to identify subscriber based upon the above payment information. Well, that may be of some significance and it may actually be helpful to you. I think it was used effectively in summation, the additional two entries. But I'm a little surprised to hear you sort of concede if that hadn't been there, it wouldn't be a business record. Maybe it would look like a business record, but wouldn't you be making the same argument really? That there was never something that looked like this in the files of optimum. And so this is a reconstruction, it's a report that is made in response to a request from the government to make a query to a database. Yes, your honor. And when we were arguing this down below, the government pointed to certain cases. For example, the Comasa case, which says that they can, in certain instances, extract business records from a computer, and just because they're being extracted near the time of the trial from a computer base doesn't mean that they're not necessarily business records. So I think I argued below, I think I did argue below that this was not a business record, that this was obviously a query which was only submitted by the government just prior to the trial beginning, and I lost on that. Right, but isn't this, the data that is the basis for this computer report, computer generated report, was recorded in the normal course of a business by maybe not a someone, maybe by a mechanical electronic means, but was recorded when the payments were made. Yes, your honor. But this is not a record of what was recorded back then, which is made clear by the lower portion of the document. Yeah. So I'm not sure if I'm following what your honor was saying. Unless the government, but I assume they're not disputing that fact, that that is what this document is. Certainly. They issued some type of subpoena or demand for documents just prior to trial, solely for the purpose of litigation. And they didn't get back all the underlying records which your honor may be referring to. They got a single page, and it was a single page coupled with the 90211 certification. So, who knows what the actual records would have said. Suppose someone had come in as a witness, as the custodian of records, and testified. Here's how it works at Optimum. No human being ever sees the payments, the check or the electronic deposit or whatever, the charge to the credit card gets made automatically by machines. The computers record all the payments that were made, and as a result, we have a database, which we use in the normal course of our activities to answer customer queries, to follow up on billing if there's a problem. It's part of what we do to have this database, and it can be queried in various ways. And when I got this subpoena, what I did was I pushed this button and that button and that entry in my computer to generate this record, which responded in this way to who paid the bill for this particular cable account. And this is what I've got, and the prosecutor then says I offer this document. Would you be making the same argument? Yes, but I would have had an opportunity to lay a foundation of why it's not a business record, because- I understand you'd be able to cross-examine the person, but how, this data is in the computer. How do we get it out in admissible form, in your view? What should have happened? What should have happened is that the original payment documents that make up this business record might have met the prerequisites. Well, but maybe there aren't any, is my assumption, that there may not be an invoice. At least as I understand the way my computerized bills for various utilities get done, there's an entry in my checking account that says electronic transfer to Con Edison. There's an entry on my credit card statement that says we paid your Verizon bill. I never got sent a bill. I assume they didn't generate a bill. They'd have some hook up with the credit card company, with the bank, and these things all happen automatically. And then they have these electronic records, which can be queried to connect one thing to another thing, or just to report who paid what. And this is what they've got. Are you suggesting that because there's not something like a paper record. I mean, the earliest computerized records that came in were basically printed out versions of, because there was no longer a paper. Either there was a paper in the first place and it got scanned into a computer, or there never was a paper. But there was something that looked like that, so that they may have sent me something on paper, but they didn't keep any of that. It was all their electronic records that they were relying on. So, I mean, I think you're suggesting something that would basically disable the government from proving this fact using these records, unless Optimum had maintained certain types of forms. Or even had them to begin with. I would argue that, because this isn't, for example, in other cases, for example, a mortgage application process, all those documents that your honor is referring to do exist. And maybe you'll have a payment record. Yeah, we do have one. You'll also have the signed documents, the notarized documents. But I think the point, if I understand the point of Judge Lynch's question, is what do you do when there's a world that doesn't necessarily have those? Then those documents don't come under- So you're saying they don't exist? Because if I make my automated payment to my electric company, the fact is I made the payment, and the fact is the electric company has a record of it. It's just the record is the entry in the database. You can't say that is not a record, that it doesn't exist, because we know it exists. It's in the database. You're just saying because it didn't exist in paper form, it doesn't exist? It doesn't have to be in paper form. It could be an electronic version of a particular document. No, that's what I'm saying. Why does it have to be a document? A business record is basically a memorialization of something, and it need not exist, I don't think, in the rule as a separate document. But it has to be a record. Right, and if it's in the database, it has been recorded. A record is something that's been recorded. But this is not, but this, okay, although we have a database here that was queried, we don't really have a record. So I guess that, then backing up, and this is getting maybe metaphysical. Are you agreeing that there's a record, which is the data in the database? And are you saying that, okay, there may be a record, but you know what? There is no way to admit that record into evidence, because any extraction of it has to occur through a process that puts it onto a printout of some sort of query. And the printout itself is not the record, so that when you have a record in a database, it is sort of forever invisible and inadmissible. Is that sort of the implication of your position? I'm not sure that I would go that far, because there might be cases where there is a record. No, and I'm suggesting my hypothesis, or my hypothetical world, is where all the payments are happening electronically with no underlying separate document. Are you saying that in those circumstances, the record of payment, which does in fact exist in the database, because if you query it, you look, you can go in there, you can find it. You're saying it could never be turned into a business record admissible at trial, because it cannot be generated to be viewed by the human eye without a query that creates another document. And that document will always and forever, by definition, not be the record itself, which only exists in bits and bytes. That seems to be the implication of your argument, which seems odd, because we know it exists. We have a witness that says it exists. Well- But it's invisible. I'm not sure that I can- It's baked into a database. I'm not sure that I can argue that records that are part of a computer system that are queried could never rise to the level of 803- In the world I have hypothesized where there are no underlying documents, where everything's electronic. If there's no underlying documents, then I would argue it is not a record. Excuse me. It's what you're saying. Maybe I can help you a little. I took you to be saying not so much that, but if the query were who paid the bill or how was the bill paid on this account on this date, and what was printed out was a simple record of a transaction in some way, shape, or form, that might work, but that what you are complaining about is that the government asked the database to do something that is not normally done, which is to somehow match up certain dates or certain- I don't know even what they asked precisely, but find me which credit cards paid for this account at various times. And how is it associated to the defendant? How did this credit card associate with which payments? And it got a list of three out of five, and the other two they couldn't answer. And therefore, what was generated was something different than a record of each payment, but was some sort of complicated, you know, interacted- Yes, that's the argument I think I was starting out trying to make. In this particular case, the very fact that we have a statement at the bottom of this record that they're unable to identify the subscriber based upon the above information indicates to me that this is not a simple extraction from a computer of payment records. So something is problematic. Why isn't it just a compilation of records? If you had a person-let's say this wasn't a database. Let's say it was one million file cabinets. And you had a person who had come in and said, Hi, I'm from the whatever company, and I've gone through all million of the file cabinets, and I looked for every payment record matching criteria X, and here's what I've got. Three match this, and two I can't, you know, whatever it says. And I was unable to identify the subscriber information. Here are the five records. And it said that. Would that become a problem? It might, but the district court- Why? Because the district court would have an opportunity after cross-examination to determine whether the three prerequisites are met. But we jumped that stage by using the self-authentication route. So part of your problem is with the self-authentication, right? Yes. And are you suggesting that the self-authentication rule is unconstitutional under the confrontation clause because the authentication clearly is testimonial? It's clearly something that is produced for purposes of trial as a report. It's a hearsay document. And you didn't get to ask the guy, how did this actually come to be? Was this generated in some reliable fashion, et cetera, et cetera? Is that the- Yes, I would argue that. And I would also put the question to the witness, why does the self-authentication piece of paper indicate documents when it's a single page? Wait a minute. Was this self-authenticating certificate introduced into evidence? I don't believe so. I think government said it's 501. It only goes to admissibility. That's the thing. If it was not admitted, right? I mean, if it was only going to foundation for the judge to determine admissibility, then it wasn't used as evidence at trial. My understanding is these certificates, as a general matter, are not admitted. They're not shown to the jury. The jury is not given this testimony. The reason it's sent to the judge is so that the judge has foundation to admit the business records. The business records, the question is, are the business records hearsay? Not is the certificate hearsay. I think that is what occurred, Your Honor. I think- So then how do we get into a confrontation clause problem with the certificate that's never admitted to the jury? Because it's still used at the trial, and it's used as a foundation. You know, I use stuff at trial for a foundation. But if it doesn't go to the jury, it's not testimony. But it was a way of bypassing having a witness who we could have confronted to determine whether or not- But a witness who wouldn't have testified to the jury, right? You could have done that outside the presence of the jury to determine the foundation for the business records. Well, that's another interesting question. Do we have any authority for whether the confrontation clause applies to foundational questions? But let me ask you something else, which I think goes to the heart of this. I love this case. I love the arguments. I think this is a fascinating set of conundrums about how the business record and self-authentication rules work in an electronic world. What possible difference could this have made at trial? Because as I understand it, there were 41 different accounts into which the government contended this gentleman deposited stolen checks. Three of those are at issue in this argument, and actually only two because one of the other- one of the three accounts that are at issue here is proven up in other ways. And the other ways included video of the defendant or someone that the jury clearly thought was the defendant depositing checks into particular accounts. Others were authenticated because they were accounts in the same name as the defendant. It could have been a pseudonym, except it also had his address on the accounts. And it's also sort of a coincidence that he's the guy who was the messenger who carried the checks that turned up stolen, or was supposed to have carried the checks that turned up stolen, from the post office box back to the Department of Human Resources. This is the evidence that turned the tide. This is something that could possibly- and again, this is not a case of there were 41 separate counts. So maybe two of those accounts would be affected by this. This was a case where the government charged one big count, and all the jury had to find, really, to return a guilty verdict was at least one of those. It was a case where they were convinced beyond a reasonable doubt that your client had been the person who stole the checks and deposited them. So this is fun. You can tell it's fun by how long we've taken with it. But what difference does it make? Why isn't this manifestly as harmless an error as you could think of, assuming it's any error at all? And considering we have kept you up considerably past your initial time, please do take a minute to respond to Judge Lynch's question. But after that, we're going to hear from the appellee. Yes, Your Honor. Yes, coming in here, I viewed that as a real battleground in this appeal, because I think I have a strong argument about the business record and why it does not qualify, and also the problem with the 902.11 document. My client did testify. He denied the records. He denied that he had paid his cable accounts with it. Yeah, like all the more so then, right? I mean, this is not just a case where we're looking at a reasonable doubt argument, and the government had the proof that it had, and it's good or it's bad. This is a case where the defendant testified, and the jury disbelieved him clearly. The jury clearly thought he was lying. And indeed, it's a little hard to see on a cold record how they could reach another conclusion, because they had him and his face before them. They had a picture of him that they could take into the jury room that was conceitedly a picture of him that they could compare with the video, right? And they had the ability to assess his credibility. And I'm still at a loss to see why this particular evidence made any difference at all. I mean, I get that the government is proving its case in as many ways as it possibly can and cross-arguing all these other things, but really, this is – we could say with a straight face that this affected the verdict? Take a quick shot at that question. I would talk about the lack of evidence. There was no cooperating witness who testified that he did it. He was never caught red-handed doing it. No physical evidence was seized from him. They said they had videos of him, but when you looked at the videos, as I argued to the jury, you can't be sure that that's him. It could be someone who looks like him. So I understand Your Honor's point, but I would argue that it was not harmless error. Okay. We'll hear from you again, Mr. Yunella, in several minutes. Why don't we hear from the government? We have AOC Kudlow. Yes, Your Honor. Please. May it please the Court. Danielle Kudlow on behalf of the United States on appeal in as I did below. Just briefly as a threshold matter, the optimum record does not implicate the confrontation clause because it is not testimonial in nature. The real issue and dispute is that the district court did not abuse its discretion in admitting the optimum record as a business record. There's, first, no real dispute that the optimum record and its accompanying custodial declaration along with the written notice that was provided in advance complied with the textual requirements of Rule 902.11 and 803.6. Now, with respect to the admission under 902.11 as self-authenticating, to your point, Judge Nardini, the custodial declaration was not introduced as evidence at trial, and this was addressed in United States v. Qualls in a summary order by the Second Circuit, bringing up this very same point. There was no confrontation clause implicated with respect to the custodial declaration because it was never admitted into evidence. And am I correct that as a matter of general practice, I suppose, those things are not admitted since the jury? Correct. Exactly as you described, Your Honor. It is presented to the court. If there's any question to determine admissibility but not sent to the jury, it is the exhibit itself. And that is what occurred here. Every other circuit to address this issue with respect to the custodial declaration under self-authentication for 902.11, the Fifth Circuit, the Tenth Circuit, the D.C. Circuit, the Seventh Circuit, and the Ninth Circuit have all found that it does not violate the confrontation clause. But it doesn't sound to me, and counsel to the appellant can correct me if I'm wrong on rebuttal, it doesn't sound to me like that's the claim he's raising here. I think it goes to the business record, the query, I think. Correct, Your Honor. I just wanted to make that point clear to address your question earlier. And that leads me to the point which was truly challenged before the district court and before Your Honors here, is the district court was within her sound discretion to find that the defendant had not met his burden under 803.6e, that the optimum record was unreliable. And the primary points that were being argued was that the optimum record failed to say who had culled the data or provided the underlying records. Neither of those items are required by the text of 803.6, nor 902.11. And this court has rejected attempts by parties to impose additional requirements to those rules, which are designed to relax the requirements to allow the use of these records at trial. And the district court also, I would note, at Appendix 119, advised the defendant that if he thought there was something that would be of value in those underlying records, he certainly could have subpoenaed those records. The defendant argued below and also here. What would have been the underlying records? Like would you have gotten a gargantuan mainframe with the entire database? Your Honor. A hundred petabytes or something? That I do not know. It would be to the. They'd send the whole cloud over. Correct, and I think this goes to the point about whether or not you would query. The querying is an acceptable manner. The database doesn't exist as like a series of pieces that are sitting in a file somewhere, right? I mean, they literally exist in the physical universe as bits and bytes in a cloud that are scattered even in the individual bits. So if you're trying to get to the sort of molecular structure of the records, you literally have to have all of the computers on which the database resides. Correct, which is why that would be completely impracticable. Yeah, I mean, even if you ask the computer to generate after having done this report, can you also then include in your response to the subpoena a particular bill statement for the particular date on which this happened? It would still be a reconstruction. It might not necessarily. It's not like there is a scanned invoice that could then be just printed out. That, too, could be a reconstruction. Absolutely, Your Honor. Practically speaking, this is just how data works in the electronic age, and it goes to the fact also the reliability of these records because they're generated for an administrative purpose. They're created instantaneously at the time that the data is recorded in the ordinary course of business. Trial practice may be as fast evolving a technological effort as record retention. I'm just curious. As late as when I was a trial judge, people sometimes came in to testify as document custodians. Have you ever put somebody on a witness stand and asked them the four business record questions? I have, Your Honor. Oh, good. I'm glad that still exists. That is not a lost art in any means. We certainly have done that, but the 90211 is a permissible means under the rules. Yes, I understand. But to the point just also regarding the Second Circuit has already held that printing out these business records at a later date does not change the business nature characterization of these records, and that was in DeAugustino, and that was also in Potomkin. To a degree, this goes a smidge further, though, because here it's not like you're going into the banks' records and printing out images of the checks that were filed, and that would sort of be along the lines, I think, of what counsel for the appellant is saying. If they were original documents, you've got to come up with a copy of the documents. But I think that what the government is asking us to accept here goes a little bit further, is that even when there's no original document that you're going and pulling up, but it is simply data that exists in its only form in a database, you're saying when you query the database and give us a report from the database, that, too, falls within the business record exception. It may be a baby step in your view, but it is a step removed, right? That is correct, and we would argue that that baby step itself does not remove the business nature characterization. And the Third Circuit addressed that in the United States v. Battle, where it was a much larger database, and they queried it for a smaller piece. But I'd like to- I take it that if, at least if we agree with you, the government would like it if the Second Circuit went on record on this point in a published opinion, though, of course, if we didn't agree with you, then you wouldn't like that. And is there any need for us even to reach that if we were to think that this is all very fascinating? But at the end of the day, in this case, it's so clearly a harmless error that we don't- even if we agreed with Mr. Yanella about these points, you still win. Your Honor, we believe that it would be very helpful, of course, if you agree with the government, that in a published opinion, the Second Circuit addresses this issue. As I noted, it is the One Circuit, one of the few that has not, and it would provide great clarity, I think, to the district judges to be able to have an opinion. If it is not in our way, this argument never occurred. We're not here. But I would just want to touch on one point, Your Honor, that you made at the end regarding harmless error standard. Very briefly, to the extent there was any error, which there was not, that error was harmless in light of the overwhelming amount of evidence against the defendant at trial. Recognizing that my time is up, or I don't know how- You have a minute and 41 seconds left. Or you can declare yourself done, too. No, no, no, I wasn't sure if that had gone in the wrong direction. But I will just briefly summarize some of the high-level evidence that was here. There were still photographs. There were video surveillance photos, videos from ATMs with exceptional clarity showing the defendant depositing HRA checks into accounts in various names. Those records were also combined with the defendant's deluxe employment records, which corresponded in large part showing that he was doing the deliveries of the HRA checks and shortly thereafter depositing these checks into different accounts. The videos also showed him withdrawing cash from numerous accounts where the HRA checks were. The optimum record wasn't even the only piece of evidence that went to one particular account. There was surveillance footage of the defendant depositing an HRA check in the Kareem Tonto account, which has the account name for the optimum record itself. We also introduced Chase Bank records that were in the defendant's name, his Social Security number, his date of birth, his address, and personal payments, which showed he controlled that account. In that account, there were 38 HRA checks, all in different names. And then there was testimony from an HRA employee who was responsible in part for taking these deliveries in person, and she testified at transcript page 48 that she identified the defendant as the lead deluxe delivery person. Your Honors, unless there's any additional questions from the court. Okay. No, thank you very much. We'd rest on our submission and respectfully request that the conviction be affirmed. Thank you. Thank you. Appreciate that. Why don't we hear from Mr. Yonella? You've reserved two minutes for rebuttal. We'll try to hold tightly to that. Yes, Your Honor. If there's anything that you would like to add. I would just point out the payments here were via credit card. And I just want to address the point that the prosecutor made, that they do sometimes call custodians of records, but rarely. Most of the cases coming in these days use the self-authenticating provision of Rule 902. And I would just argue that that's particularly troublesome in a case like this, where the record that they're seeking to introduce on its face indicates that there's some type of irregularity, and they can't precisely reproduce the records as they existed back at the time of payment. Because Optimum certainly would not take money from somebody and say they can't attribute it to any particular customer. That's not what happens. Optimum would take money for free. Maybe giving away the money without a payee would be more of a problem. Yeah. They wouldn't be able to get away with that, but maybe they'd try. Thank you very much. Unless there are any further questions. All right. No. I want to thank both counsel for both sides. It was very well argued, a very interesting issue, and we appreciate all the arguments we've received. We will reserve decisions. So thank you both very much.